# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE KAY JACKSON-NUGENT, | Case No. 1:12-cv-01570-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S COMPLAINT** |
| v. | (Doc. No. 1) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Jacqueline Kay Jackson-Nugent ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.)

**FACTUAL BACKGROUND**

Plaintiff was born in 1954, has an Associate's Degree ("AA") from the University of Phoenix, and is continuing her education online through the University of Phoenix to obtain a bachelor's degree ("BA"). (Administrative Record ("AR") 31, 37, 192.)

Plaintiff's past relevant work includes running a child care business between 1999 and 2003, but Plaintiff lost her license due to an allegation of child abuse. (AR 40-41.) In 2006, Plaintiff worked as a food court cashier and was promoted to the position of manager, but she was later fired. (AR 38-39.) Between June 2008 and September 2008, Plaintiff worked as a courier driver. (AR 41.)

On January 26, 2009, and on July 25, 2009, Plaintiff filed applications for SSI and DIB, respectively, alleging disability beginning September 30, 2008, due to asthma, chronic obstructive pulmonary disorder, muscle spasms, fatigue, difficulty concentrating, and difficulty being around others. (AR 184-98, 220.)

**A.    Relevant Medical Evidence[2]**

The record indicates that between 2008 and 2009 Plaintiff sought medical care from Loretta Locke, M.D., who diagnosed Plaintiff with depression in September 2008 and prescribed Zoloft. (AR 324, 340.)

On September 23, 2008, Plaintiff was evaluated by therapist Pat Robertson, who diagnosed her with major depressive disorder, recurrent and moderate. (AR 349.) Mr. Robertson assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 58.[3] (AR 349.)

In October 2008, Dr. Locke completed a form indicating that Plaintiff was completely disabled between September 10, 2008, and December 1, 2008. (AR 321.) While Dr. Locke noted

---

[2] Plaintiff's challenge of the ALJ's decision is limited to the consideration of her mental impairments. Therefore, only the medical evidence relevant to Plaintiff's mental impairments are set forth in this section.

[3] The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnosis & Statistical Manual of Mental Disorders 32 (4th ed. 2000). The clinician uses a scale of zero to 100 to consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health- illness," not including impairments in functioning due to physical or environmental limitations. *Id.* at 34. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

2

that Plaintiff had no physical limitations, she opined that Plaintiff was limited in her social functioning due to mild agoraphobia and social isolation, she was unable to focus on tasks or follow complex instructions, and she was unable to concentrate and complete tasks. (AR 323.)

Between October 2008 and March 2009, Plaintiff sought counseling with Robert Garza. (AR 352-58.) At her final session, Mr. Garza noted that there was no evidence of psychosis, but that Plaintiff was at risk of continued or increased symptoms if not treated. (AR 352.) Mr. Garza also indicated that Plaintiff was unable to work and was on state disability. (AR 352.)

On April 18, 2009, Plaintiff was referred to Aimee Riffel, Ph.D., who conducted a psychological evaluation. (AR 392-96.) Dr. Riffel diagnosed Plaintiff with a mood disorder and polysubstance dependence in full remission. (AR 395.) Dr. Riffel noted that Plaintiff had a good ability to understand, remember, and follow short, simple instructions; maintain the appropriate level of concentration, pace, and persistence necessary to perform one- or two-step simple, repetitive tasks; and manage changes in a routine work situation. (AR 396.) She also noted Plaintiff had a fair ability to relate to others, including co-workers, supervisors, and the public; and a fair ability to tolerate the pressures and expectations of a normal work setting. (AR 396.) Dr. Riffel believed Plaintiff's willingness to use her available resources and her support system would likely lead to improvement in the following twelve months. (AR 396.)

On May 19, 2009, Plaintiff was again seen by Dr. Locke who diagnosed Plaintiff with depression and anxiety. (AR 376.) Dr. Locke noted that Plaintiff was still unable to work, and recommended that she continue taking the prescribed medication and continue with counseling. (AR 376.)

R. Brill, Ph.D., a state-agency non-examining source, completed a mental residual functional capacity assessment on June 12, 2009. (AR 397-414.) Dr. Brill determined Plaintiff was moderately limited in her ability to work and interact appropriately with the general public and in her ability to complete a normal workday without interruptions from psychologically based symptoms. (AR 397-98.) Dr. Brill also found Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting, set realistic goals or make plans independently of others, and work in coordination with or proximity to others without being

3

distracted by them.  (AR 397-98.)  Aside from those moderate limitations, Dr. Brill opined that Plaintiff had the "residual functional capacity to persist in unskilled to semi-skilled work in a setting with limited social demands (e.g., with coworkers, supervisors, and public)." (AR 399.)

On June 12, 2009, Dr. Brill also completed a psychiatric review technique form, noting that Plaintiff had a mood disorder, not otherwise specified, which was not severe; Plaintiff would have moderate difficulties in maintaining social functioning; and Plaintiff would experience mild limitation in her activities of daily living and in maintaining concentration, persistence, or pace. (AR 401-13.)

On October 1, 2009, A. Khong, M.D., completed a review of Plaintiff's medical records. (AR 420-22.)  Dr. Khong agreed that Plaintiff's mental health symptoms caused moderate limitations but that she would be able to perform simple, repetitive tasks in a setting with limited public contact.  (AR 422.)

On October 13, 2009, Plaintiff again saw Dr. Locke, who diagnosed Plaintiff with depression and noted Plaintiff was suffering from visual and auditory hallucinations.  Dr. Locke adjusted Plaintiff's medications.  (AR 453.)

On October 14, 2009, Plaintiff was evaluated at Mercy Medical Center by Kim Hartwig, M.D., who diagnosed Plaintiff with depression and hallucinations.  (AR 451.)  On October 28, 2009, Dr. Hartwig saw Plaintiff again and diagnosed her with panic attacks and agoraphobia.  (AR 449.)  Later, on November 12, 2009, Dr. Hartwig noted that Plaintiff's paranoia had increased and diagnosed Plaintiff with paranoid delusions, visual and auditory hallucinations, and depression. (AR 446.)  Plaintiff was seen several more times at Mercy Medical Center throughout 2010 and 2011.  (AR 435, 437, 439, 514, 518, 522.)  On June 29, 2011, Grace Galang, M.D., diagnosed Plaintiff with anxiety and paranoid schizophrenia, and adjusted her medication.  (AR 514.)  Dr. Galang noted that Plaintiff was appropriately dressed, her speech was normal and clear, and her mood was normal.  (AR 514.)  Dr. Galang also indicated that Plaintiff's judgment and insight were good.  (AR 514.)

On December 9, 2010, Dr. Locke completed a form that Plaintiff submitted to the University of Phoenix indicating that Plaintiff's disability was "permanent" and that she would

4

need more time to complete her assignments due to her poor concentration and difficulty focusing. (AR 319-20.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On December 16, 2010, the ALJ held a hearing at which Plaintiff and a vocational expert ("VE") testified. (AR 33-68.)

**1.     Plaintiff's Testimony**

Plaintiff completed her AA degree at University of Phoenix in December 2009 and is currently pursuing a BA online through the University of Phoenix.  (AR 37.)  She spends approximately four days per week attending online classes in the degree field of Human Services and studying.  (AR 38.)  Plaintiff lives in a house with her son and his children where she does housework and prepares meals for the family.  (AR 43- 44.)

Plaintiff testified she was unable to work due to her medication side-effect, which makes her sleepy. (AR 48.) She also suffers from agoraphobia, and it is hard for her to be around people and socialize.  (AR 48.)  Plaintiff reported a memory problem and indicated that she gets distracted. (AR 53.) On a typical day, Plaintiff wakes up, turns on her computer, checks her class assignments, awakens her grandson, sits down at her computer and "check[s] everything off," including whether there are responses from other students or teachers, and checks her email for correspondence from financial aid, academic, or disability advisors. (AR 54.)  Her day continues with laundry and cleaning, but she reported that she "never get[s] anything completed . . . [because] it's really hard to focus on one thing when you're the only one that's trying to keep a house running."  (AR 55.)

**2.     Vocational Expert's Testimony**

A VE testified that Plaintiff's past work as a cashier and as a courier were both light[4] and

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

unskilled (AR 60); Plaintiff's past work as a daycare provider was medium[5] (AR 60); and Plaintiff's past work as a food court manager was medium and skilled (AR 61).

The ALJ posed two hypotheticals for the VE's consideration. First, the ALJ asked the VE to assume a hypothetical person of the same age and with the same education and work experience as Plaintiff who can perform "light" work, but who must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (AR 61.) The VE testified that such a hypothetical person could perform Plaintiff's past work as a cashier and a courier. (AR 61.)

In the second hypothetical, the ALJ asked the VE to consider the same person as in the first hypothetical, but to also assume that such a person is limited to performing simple, repetitive tasks with limited public contact. (AR 61-62.) The VE testified that a person with that combination of limitations could not perform Plaintiff's past work, but there was other work that such a person could perform including as a linen-supply load builder, a garment sorter, or an ampoule filler. (AR 62.)

### 3. ALJ's Decision

On January 21, 2011, the ALJ issued a decision finding Plaintiff not disabled since September 30, 2008. (AR 25.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date, September 30, 2008; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform past relevant work as a daycare provider, production laborer, or food court restaurant supervisor; but (5) could perform her past relevant work as a cashier or courier driver. (AR 21-25.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[6] to (1) lift and carry twenty pounds occasionally, and ten pounds frequently; and (2) to sit

---

[5] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c).

[6] The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a

6

and stand or walk six hours in an eight-hour work day.  (AR 23.)  Plaintiff must avoid concentrated exposure to fumes, dusts, odors, gases, and poor ventilation.  (AR 23.)

Plaintiff sought review of this decision before the Appeals Council.  (AR 11.)  On July 27, 2012, the Appeals Council denied review.  (AR 1-3.)[7]  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

**C.    Plaintiff's Contention on Appeal**

On September 24, 2012, Plaintiff filed a complaint in this Court seeking review of the ALJ's decision.  Plaintiff contends that the ALJ erred in finding that Plaintiff did not have a severe mental impairment at second step of the five-step sequential evaluation and, in doing so, failed to properly consider the medical evidence regarding limitations arising from her mental conditions.

## **SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)."Substantial evidence is more than a mere scintilla but less than a preponderance."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a

---

claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

[7] In denying review, the Appeals Council reviewed additional medical records from Mercy Medical Center and Mercy Medical Pavilion dated from September 13, 2011, to June 1, 2012; the records were incorporated into the record at pages 480 through 593.  (AR 5.)

specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider

subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.     The ALJ Properly Considered the Limiting Effects of Plaintiff's Mental Impairments**

The ALJ found that Plaintiff "has the following severe impairments: asthma, hypertension, obesity, and arthralgias." (AR 21.) With regard to Plaintiff's mental impairments, however, the ALJ determined that they cause no more than "mild" limitation. As such, the ALJ concluded that Plaintiff's mental impairments are not severe. (AR 23.)

Plaintiff asserts that the ALJ erred in finding her mental impairments "not severe" at the Second Step of the sequential evaluation because the ALJ failed to properly consider the physicians' opinions regarding her mental limitations. Plaintiff argues that Drs. Locke, Riffel, and the agency physicians all concluded that Plaintiff had limitations resulting from her mental impairments, which the ALJ failed to adequately consider and credit. According to Plaintiff, these doctors primarily concluded that Plaintiff was limited in her ability to interact with the public and could only perform simple, repetitive tasks. Nonetheless, the ALJ concluded that Plaintiff's mental impairments were not severe, and did not include any of these limitations as noted by the doctors in the ALJ's formulation of Plaintiff's RFC. The only rationale the ALJ provided for rejecting these limitations was citation to Plaintiff's academic achievements. Plaintiff asserts that this explanation does not properly account for the fact that Plaintiff was completing her college course work with accommodation for her mental limitations – primarily her inability to concentrate and remain focused. (Doc. 16, 18:1-19; *see also* AR 319-20.)

The Commissioner asserts that the ALJ set out the opinions of each of the physicians with regard to Plaintiff's mental functioning limitations, but gave them little weight in light of Plaintiff's academic achievements. The Commissioner contends that, because Plaintiff testified that she spent four days out of seven studying subjects related to a degree in human services, the "ALJ reasonably concluded that Plaintiff's academic accomplishments suggested that she was a 'rather highly-functioning person.'" The Commissioner maintains that Plaintiff's academic activities were a valid basis for discounting the doctors' opinions regarding her mental limitations. (Doc. 17,

6:11-8:20.)

Because the ALJ resolved the Second Step in Plaintiff's favor and continued the sequential evaluation, any error in finding Plaintiff's mental impairments "not severe" at the Second Step is only harmful error if the ALJ failed to properly consider the limitations stemming from Plaintiff's mental impairments at later steps of the analysis. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). This is so because the ALJ is required to consider all limitations and restrictions imposed by all impairments, even those deemed not severe, at all the later steps of the sequential evaluation process. SSR 96-8p, 1996 WL 362207, at *34477 (July 2, 1996) (requiring ALJ's RFC assessment to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). Plaintiff contends that the ALJ failed to adequately consider all her mental limitations as opined by the physicians of record.

The ALJ gave little weight to the opinion of Dr. Locke that Plaintiff was disabled because of her mental impairments, little weight to Dr. Riffel's opinion that Plaintiff could only perform simple, repetitive work with one-or two-step tasks, and little weight to the opinions of Drs. Kong and Brill that Plaintiff was limited to simple, repetitive tasks with limited public contact. To specifically and legitimately reject a physician's opinion, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and make findings. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ must do more than offer a conclusion; rather, the ALJ must explain why his interpretation of the evidence, rather than the doctors', is correct. *Id.*

In this case, the ALJ did not silently reject Plaintiff's mental limitations as opined by the physicians, but determined that Plaintiff's college coursework – performed over the time frame of Plaintiff's alleged disability – undercut the physicians' findings. This is an appropriate basis to reject the opinions of the doctors. For example, in *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), the court held that the ALJ permissibly rejected a treating physician's opinion of disability that was inconsistent with the claimant's level of activity. Specifically, the physician had opined that the claimant's disability precluded her from engaging in *any* bending, stooping, crouching, crawling, kneeling, climbing, and balancing and she was never to be exposed to smoke,

10

fumes, dust, temperature extremes, humidity, vibrations, or noise, among other things. *Id.* The court observed there was no basis in the opinion for these restrictions, the claimant had never asserted any problem with many of the areas of limitation, and the limitations were inconsistent with the level of activity that the claimant engaged in by maintaining a household and raising two young children with no significant assistance from her ex-husband.

Similarly, in *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), which the Commissioner cites, the claimant maintained that the ALJ improperly rejected the opinion of a physician who opined that the claimant had difficulty paying attention, concentrating, and organizing herself without getting overwhelmed. While the ALJ agreed with the physician's conclusion, the ALJ determined that these limitations would not affect the claimant's ability to work because the limitations had not precluded her from completing high school, obtaining a college degree, finishing a Certified Nurses' Aide training program, and participating in military training. *Id.* The court concluded that this evidence supported the ALJ's determination that such limitations did not preclude Plaintiff from work. *Id.*

Analogous to both *Rollins* and *Bayliss*, the ALJ here concluded that Plaintiff's completion of an AA degree, her pursuit of a BA degree, and her ability to study four days per week, despite concentration problems stemming from a mental impairment, was evidence that her mental impairments were only mild and warranted rejection of the physicians' opinions that she was limited to simple, repetitive tasks with only one or two steps. Moreover, the fact that Plaintiff was pursuing a degree in the field of Human Services indicated that she was not particularly limited in her ability to have public contact.

Plaintiff maintains, however, that her ability to complete a college education does not constitute a legitimate basis to reject the physicians' opinions that she could only complete simple, repetitive tasks with one or two steps and that she was limited in her ability to have public contact. Rather, Plaintiff was completing this course work with a disability accommodation. Specifically, Dr. Locke submitted a form to the University of Phoenix indicating that Plaintiff was disabled and had resulting difficulty with focus and concentration, which meant she would require extra time to complete assignments. (AR 319-20.)

11

Even in light of this requested accommodation, the evidence shows that Plaintiff was able to focus sufficiently not only to complete individual college courses, but was able to complete an AA degree and continue coursework in a BA program. Additionally, Plaintiff alleged her disability arose in September 2008; yet, she completed her AA degree in December 2009 prior to any accommodation, and she was continuing her coursework in a BA program. The ALJ was entitled to infer that the completion of college general education course work was inconsistent with the physicians' opinions that Plaintiff's lack of focus and concentration would render her unable to complete more than simple, repetitive tasks. Plaintiff also testified that she worked on her courses four days out of seven. Considered as a whole, this evidence supports a rational inference that Plaintiff's inability to concentrate and focus was no more than mild. While an accommodation for more time to complete coursework extended by Plaintiff's college institution following December 2010 may be prone to an interpretation more favorable to Plaintiff, the ALJ's interpretation was rationale and must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

As it pertains to Drs. Brill and Khong's opinion that Plaintiff was limited in her ability to have public contact, the ALJ noted that Plaintiff was pursuing a degree in the field of Human Services (AR 25); thus, Plaintiff's academic work in this particular area belied the limitations opined by the physicians as well as Plaintiff's testimony that she could not be around people. In other words, the ALJ inferred that if Plaintiff was limited in her ability to have contact with the public, she would not be pursuing a degree in Human Services. While the ALJ discussed this as part of his credibility determination, it applies to Plaintiff's assertion that she isolates herself from other people as well as the doctors' opinions that she would be limited in her ability to have public contact. This, too, was a legitimate and specific reason to reject the limitation on public contact opined by the physicians.

In sum, the ALJ did not discredit the opinions of the physicians regarding Plaintiff's mental impairments without comment. The ALJ provided a specific and legitimate reason to discredit the opinions of the physicians that Plaintiff was unable to concentrate and, at best, could only

12

complete simple, repetitive tasks with limited public contact. Plaintiff's continued completion of college course work is substantial evidence that a reasonable mind might accept as adequate to support the ALJ's conclusion that Plaintiff's mental impairments were only mild, and did not limit Plaintiff to the degree opined by the physicians. *See Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("Under [the substantial evidence] standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). Thus, the Court concludes that the ALJ adequately considered the limitations arising out of Plaintiff's mental impairments.

**B.     Any Error at the Second Step is Harmless**

Assuming *arguendo* that the ALJ erred in discrediting the physicians' opinions regarding Plaintiff's mental functioning, Plaintiff has not established that such an error was prejudicial. To the extent that Dr. Locke opined that Plaintiff was unable to perform any work because of her concentration difficulties, the ALJ specifically noted that Dr. Locke's opinion of disability was for a period less than 12 months, and as such could not support a disability finding. *See* 42 U.S.C. § 423(d)(1)(A) (2004) (to qualify for benefits under the Social Security Act, a claimant must prove, among other things, that he or she suffers from a medically determinable physical or mental impairment that "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); *see also Ramos v. Astrue*, No. 11-cv-4029-SP, 2012 WL 2912942, * 6 (C.D. Cal. July 17, 2012) (finding 12-month duration requirement was a specific and legitimate reason to reject physician's opinion that claimant was temporarily and totally disabled).

Further, even crediting the opinions of Drs. Riffel, Brill, and Khong, who found Plaintiff's mental impairments limited her to simple, repetitive tasks and Drs. Brill and Khong's opinion that Plaintiff was limited in her ability to have public contact (*see* AR 399, 422), the ALJ asked the VE at the December 16, 2010, hearing whether a person with these hypothetical limitations could nonetheless perform some work. (AR 62.) The VE testified that a person with these additional limitations could not perform Plaintiff's past relevant work, but could perform other work including that of linen-supply load builder, a garment sorter, and an ampoule filler. (AR 62.) The

13

VE also provided testimony regarding the numbers of jobs available under each of these job titles. While Plaintiff asserts that the ALJ did not incorporate these limitations into her RFC, even if the ALJ had done so, the VE's testimony establishes that there was other work Plaintiff could perform even if she could not perform her past relevant work.  Thus, even crediting the physicians' opinions that Plaintiff had difficulty focusing and concentrating and could not perform more than simple, repetitive tasks with limited public contact, Plaintiff has not satisfied her burden to show that any error in failing to incorporate these limitations into the RFC was prejudicial. *See Sanders v. Shinseki,* 556 U.S. 396 (2009)

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Jacqueline Kay Jackson-Nugent.

IT IS SO ORDERED.

Dated:    **October 24, 2013**                    **/s/ Sheila K. Oberto**
                                                                  UNITED STATES MAGISTRATE JUDGE